**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ORLANDO RIOS,

                              Plaintiff,

        - v -                                                    Civ. No. 9:03-CV-00163
                                                                        (LEK/RFT)

ELIZABETH C. SQUIES, Doctor at Syracuse University
Hospital; JUAN AYARDI, Doctor at Syracuse University
Hospital; M.D. ANTHONY GRACEFFO; DR. TASSIOPOULOS,
Doctor at Syracuse University Hospital; GREGORY
MATTHEWS, Medical Doctor; RICHARD C. LAUX,
Medical Doctor; A. PAOPLANO,[1] Medical Doctor; E. NUNEZ,
Medical Doctor; T. NESMITH, Medical Doctor;
M.D. W. SMITH; M.D. KANG LEE; J. MITCHELL;
and QUCLSE,

                              Defendants.

**APPEARANCES:**                                              **OF COUNSEL:**

ORLANDO RIOS
Plaintiff, *Pro Se*
87-B-0439
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ELIOT SPITZER                                          GERALD J. ROCK, ESQ.
Attorney General for the State of New York                 Assistant Attorney General
Attorney for Defendants Graceffo, Laux,
Paolano, Nunez, Nesmith, and Lee
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

---

[1] Plaintiff mistakenly spells Defendant Paolano's name as "Paoplano." *See generally* Dkt. No. 38, A. Paolano
Aff., dated Apr. 5, 2005.  The Court will refer to this Defendant by the proper spelling.

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Orlando Rios brings a civil action pursuant to 42 U.S.C. § 1983, alleging Defendants were deliberately indifferent towards his medical needs in violation of the Eighth Amendment.  Dkt. No. 8, Am. Compl. at p. 8.  Defendants Anthony Graceffo, M.D., chief physician at the Auburn Correctional Facility ("Auburn"), Richard Laux, physician's assistant at Auburn,[2] A. Paolano, M.D., physician at the Great Meadow Correctional Facility ("Great Meadow"), E. Nunez, M.D., physician at Great Meadow, T. Nesmith, physician's assistant at Great Meadow,[3] and Kang Lee, M.D., physician at the Clinton Correctional Facility ("Clinton"), bring this Motion for Summary Judgment.[4]  Dkt. No. 38; *see also* Am. Compl. at ¶¶ 8-10, & 12.  Plaintiff opposes the Motion.  Dkt. No. 44.  For the reasons to follow, it is recommended that the Motion for Summary Judgment be **granted**.

## I.  FACTS[5]

On or about June 26, 1997, Plaintiff felt abdominal pain and was seen by a nurse.  Am. Compl. at ¶¶ 16-18.  Plaintiff continued to feel pain and visited the infirmary frequently.  *Id.* at ¶ 19.

---

[2] Although Plaintiff refers to Defendant Richard Laux as a physician, he is in fact a physician's assistant and not a medical doctor.  Dkt. No. 38, Richard Laux Aff. at ¶ 2.

[3] Plaintiff's reference to Defendant Ted Nesmith as being a physician is also incorrect as he is a physician's assistant.  Dkt. No. 38, Ted Nesmith Aff. at ¶ 2.

[4] Defendants Elizabeth C. Squies, M.D., Juan Ayardi, M.D., Dr. Tassiopoulos, Gregory Matthews, M.D., W. Smith, M.D., J. Mitchell, and Quelse have not been served with the Amended Complaint nor have they otherwise appeared in this action.  *See* Dkt Nos. 11, 19, 27, 28, 29, 30, & 31.

[5] Local Rule 7.1(3) states that "[t]he non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises."  N.D.N.Y.L.R. 7.1(3).  Plaintiff's Statement of Material Facts fails to comport with Local Rule 7.1(3) as it summarily denies all allegations contained in the Defendants' Statement of Material Facts.  *See* Dkt. No. 46, Pl.'s Am. Decl.  Therefore, this Court will utilize Plaintiff's Amended Complaint, Defendants' Statement of Material Facts, Plaintiff's Declaration in Opposition to the Motion, and documents submitted in conjunction with the Motion for Summary Judgment to adduce the facts of this case.

On July 9, 1997, Plaintiff was transferred to Syracuse University Hospital where he was advised that he would need surgery for possible appendicitis.  *Id.* at ¶ 20.  Instead of removing the appendix, part of his intestines were removed.  *Id.* at ¶ 22.  Additional testing conducted subsequent to the surgery showed Plaintiff suffered from Crohn's disease.[6]  *Id.* at ¶ 25.

During the period of July 17, 1997 to August 1998, Plaintiff was housed at the Auburn facility.  Dkt. No. 46, Orlando Rios Decl. at ¶ 30.  On August 12 and 18, 1997, Plaintiff received several medications for his condition.  *Id.* at ¶ 37, Ex. P, dated Aug. 12 & 18, 1997.  A request for a consultation was made for Plaintiff to see a specialist and Plaintiff was seen on August 18, 1997, whereby one of the recommendations was to discontinue Prednisone, an anti-inflammatory medication to treat Crohn's disease.  *Id.* at ¶ 38, Ex. Q, Request for Consultation.  On September 26, 1997, Plaintiff was seen by the medical staff and received Prednisone.  *Id.* at ¶ 39, Ex. R, dated Sept. 26, 1997.  On October 22 and 31, 1997, Plaintiff was prescribed Prednisone.  *Id.* at ¶¶ 43 & 44.  On December 22, 1997, Defendant Graceffo requested a consultation for Plaintiff for "G.I."  *Id.* at ¶ 45.  The consultant prescribed certain medications including Prednisone on December 23, 1997.  *Id.* at ¶ 46.  On February 24, 1998, Plaintiff was examined by Defendant Graceffo and received no medication.  *Id.* at ¶ 47.  On March 5, 1998, Plaintiff requested to be seen by Dr. Graceffo.  *Id.* at ¶ 50.  Then on March 6, 10, 17, 23, 31, and April 2 and 20, 1998, Plaintiff received numerous medications.  *Id.* at ¶¶ 51-57.  On May 7, 1998, an appointment was made for Plaintiff to see a gastro specialist.  *Id.* at ¶ 58.  Then on May 11 and June 4, 1998, Plaintiff again received medications.  *Id.* at ¶¶ 59 & 60.  On July 7, 1998, Defendant Graceffo removed a medical hold on

---

[6] It should be noted that when dealing with Crohn's disease, "many patients are first seen with an acute abdomen that simulates acute appendicitis or intestinal obstruction."  THE MERCK MANUAL 303 (17th ed. 1999).

Plaintiff.  *Id.* at ¶ 63.  On July 20, 1998, Plaintiff was prescribed Prednisone and Asacol.  *Id.* at ¶ 65.

On July 21, 1998, the duration of the medication Plaintiff was supposed to take was extended.  *Id.* at

¶ 66.

Then, in October 1999, Plaintiff was seen by Dr. Paolano at Great Meadow.  *Id.* at ¶ 2.

Plaintiff told Dr. Paolano that he had been misdiagnosed in 1997 by Dr. Graceffo at Auburn.  *Id.*

Despite this conversation, Plaintiff states that instead of "recognizing that the diarrhea was the result

of the removal of these organs, Dr. Paolano . . . assumed that the diarrhea was being caused by

active Chrones [sic] disease."  *Id.* at ¶ 6.

During the period of January 2000 through February 2003, Plaintiff was housed at the

Auburn Correctional Facility twice from October 18-24, 2000, and April 29-June 5, 2002, and at the

Clinton Correctional Facility from August 22, 2002 till August 26, 2002.  Defs.' 7.1 Statement at ¶¶

8 & 9.  Throughout Plaintiff's first housing at Auburn in October 2000, he made no complaints to

the medical staff and neither Dr. Graceffo nor Laux treated Plaintiff.  *Id.* at ¶¶ 28 & 29.  During

Plaintiff's second stay at Auburn, on May 13, 2002, Dr. Graceffo provided a prescription to Plaintiff

for Lomotil, an anti-diarrheal medication which Plaintiff had already been taking.  *Id.* at ¶ 30.

Additionally, Laux first saw Plaintiff on May 22, 2002, at Auburn when he prescribed Prednisone to

Plaintiff for his complaint of diarrhea.  *Id.* at ¶¶ 31-35.  Laux saw Plaintiff for the second time on

May 31, 2002, after Plaintiff had ingested a twenty day prescription of Prednisone in one week.  *Id.*

at ¶ 36.  Laux advised Plaintiff of the dangers of not following instructions regarding the medication

and then prescribed Prednisone and Lomotil for Plaintiff's diarrhea.  *Id.* at ¶¶ 36 & 37.  Plaintiff

filed two grievance complaints while at Auburn, the first on May 20, 2002, alleging he was not

receiving his medication, and the second on June 3, 2002, alleging that he was receiving improper

medical care for his Crohn's disease.  Dkt. No. 38, Gerald J. Rock Decl., Exs. B & C.

While at Clinton in August 2002, Plaintiff did not seek treatment from Dr. Lee nor any other medical staff at the facility.  Defs.' 7.1 Statement at ¶¶ 10-14.  Plaintiff did not file any grievance complaints as a result of any treatment or non-treatment in Clinton.  Dkt. No. 38, Thomas Eagen Aff. at ¶ 10, Ex. A.

At Great Meadow, Dr. Paolano prescribed numerous medications to treat Plaintiff's Crohn's disease including Immodium, Lomotil, Loperamide, and Flagyl.  Defs.' 7.1 Statement at ¶ 39.  On February 13, 2000, Dr. Paolano referred Plaintiff for a consultation with a gastro-intestinal specialist.  *Id.* at ¶ 41.  The specialist recommended similar treatment to that which Plaintiff had already been receiving and further recommended other medications including Calcium Carbonate, Cholestyramine, and Actigall.  *Id.*  Those treatments and medications were administered at Dr. Paolano's direction.  *Id.* at ¶ 42.  Plaintiff filed a grievance complaint on April 22, 2002, at Great Meadow, stating that he wanted a shower, recreation, and to receive medication for his Crohn's disease, although he did not grieve against any named medical staff.  Eagen Aff., Ex. B, Pl.'s Lt. to Reams, dated Apr. 15, 2002.  An investigation was conducted which found that Plaintiff had not received his medication for his Crohn's disease.  Eagen Aff., Ex. B, Investigation Sheet, dated Apr. 29, 2002.  Plaintiff's grievance was granted in part, that he should receive his medication, and denied in part on the issue of the shower and recreation as he had been moved to another cell block. Eagen Aff., Ex. B, Inmate Grievance Resolution Committee ("IGRC") Recommendation; *see also* Eagen Aff., Ex. B, Case History and Record, dated June 12, 2002.  Plaintiff appealed to the Superintendent, who granted Plaintiff's request for medication.  Eagen Aff., Ex. B, Rios Grievance Appeal to Superintendent, dated May 17, 2002.  Plaintiff further appealed to the Central Office

Review Committee ("CORC"), which upheld the determination of the Superintendent.  Eagen Aff.,

Ex. B, CORC Appeal, dated July 3, 2002.  Additionally, Plaintiff was seen by Defendant Nesmith

on June 11, 2002, who prescribed Entocort and ordered the continuation of treatment with Calcium

Carbonate.  Defs.' 7.1 Statement at ¶ 45.  On July 25, 2002, Nesmith renewed Plaintiff's

prescription for Lomotil.  *Id.* at ¶ 46.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of

law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine

issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis

of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in

accordance with local court rules, served a concise statement of the material facts as to which it

contends there exist no genuine issues to be tried, those facts will be deemed admitted unless

properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d

Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific

facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials"

of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344

F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to

defeat a motion for summary judgment when the moving party has set out a documentary case.");
*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn
statements are "more than mere conclusory allegations subject to disregard . . . they are specific and
detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in
deciding a summary judgment motion" and the credibility of such statements is better left to a trier
of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.
1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities
and draw all reasonable inferences in favor of the nonmoving party.  *Nora Beverages, Inc. v. Perrier
Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary
judgment motion stage of the litigation is carefully limited to discerning whether there are any
genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this
point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential
Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B.  Eleventh Amendment

Plaintiff brings suit against Defendants Graceffo, Laux, Paolano, Nunez, Nesmith and Lee in
their official capacities and although Plaintiff does not specifically state that he is suing these
Defendants in their individual capacities, it will be assumed as prisoners suing pursuant to § 1983
normally sue in both capacities.  Am. Compl. at ¶¶ 5, 7, 8-10, & 12.  Plaintiff seeks a declaratory
judgment, as well as compensatory and punitive damages against these individuals in their
individual and official capacities.  *Id.* at ¶ WHEREFORE CLAUSE, §§ (I), (f), & (g).

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  The Eleventh Amendment bars a suit against the state in federal court unless the state consents to being sued or Congress legislatively overrides a state's immunity.  *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2000).  The state's immunity extends to state officials "act[ing] on behalf of the state" when the state is the "real, substantial party in interest."  *Id.* at 69-70 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddie, Inc.*, 506 U.S. 139, 142-47 (1993) & quoting *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)).  Moreover, the Eleventh Amendment will bar recovery for money damages in a suit "against state officials in their official capacities."  *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

Therefore, Defendants cannot be sued in their official capacities in a claim for money damages.  However, Rios may seek damages from them in their individual capacities.  Furthermore, Plaintiff may sue Defendants for declaratory relief in both their individual and official capacities because "official-capacity actions for prospective relief are not treated as actions against the State." *Cruz v. Gomez*, 202 F.3d 593, 595 n.2 (2d Cir. 2000) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).

### C.  Statute of Limitations

The Supreme Court has stated that the applicable statute of limitations governing all § 1983 actions alleging violations of federal constitutional rights is three years as set forth by New York's personal injury statute of limitations.  *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2002).  Additionally, "[w]hile state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues.  The

claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d at 41 (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).  The inquiry into when the claim accrues should focus on the date of the complained-of act, "not the point at which the consequences of the act become painful." *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)).

Here, Plaintiff's claims that his allegations of misdiagnosis and failure to properly treat his diarrhea and Crohn's disease all stem from his surgery in 1997 when part of his intestines were removed.  *See* Am. Compl. at ¶¶ 5, 7-10, 12, 20, & 22; *see generally* Rios Decl.  Plaintiff states that the Eighth Amendment claim accrued on February 23, 2000, when he was informed that "he should not have been taking the volume of different Crohn's disease medications for a chronic condition of diarrhea because the condition was not brought about by the disease."  Am. Compl. at ¶ 15.

Pursuant to the "continuous harm" rule, and drawing all inferences in favor of Plaintiff, Rios could claim that he did not know or have reason to know of the "misdiagnosis," which is the basis of his civil action, until February 23, 2000, when he was told that the diarrhea was not a result of the Crohn's disease.  The Second Circuit has stated that the continuous harm rule may be "applied to toll the statute of limitations for a deliberate indifference claim[.]" *Thomas v. Wright*, 2002 WL 31309190, at *6 (N.D.N.Y. Oct. 11, 2002) (quoting *Cole v. Miraflor,* 2001 WL 138765, at *5 (S.D.N.Y. Feb. 19, 2001) & citing *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) for the proposition that the dismissal of a prisoner's deliberate indifference claim was proper "where . . . the injuries complained of occurred . . . well outside the applicable three-year limitations period . . . and plaintiff has alleged no facts indicating a continuous or ongoing violation of his constitutional rights") (alteration in original).

Therefore, construing Plaintiff's claims as liberally as possible, Plaintiff may have alleged continuous harm in his Eighth Amendment claim, dating back to 1997, when he stated that medications provided to him by the medical staff at different facilities did not alleviate his diarrhea and that the same medications were prescribed over and over again even though Plaintiff received no relief from his diarrhea. Therefore, the complaints prior to February 7, 2000, dealing with the surgery, misdiagnosis, or medications prescribed are not barred by the three year statute of limitations even though the Complaint was filed on February 7, 2003. Since Plaintiff states the cause of action accrued on February 23, 2000, the Court will consider the claims prior and subsequent to and that date, along with any claims and relevant documentation provided.

### D.  Exhaustion of Remedies

Defendants claim that Plaintiff has failed to exhaust his administrative remedies as to Defendants Lee at the Clinton facility, Nunez at the Great Meadow facility, as well as Graceffo and Laux at the Auburn facility. Dkt. No. 38, Defs.' Mem. of Law at p. 6. Plaintiff claims that he has exhausted all his remedies but that Plaintiff was told he did not have to follow up since his problem had been solved. Orlando Rios Decl. at ¶ 74. He also states that he made numerous attempts to exhaust but was thwarted by the grievance staff and that he was led to believe he could not "procedurally grieve staff in a different facility from the one that he was currently housed." *Id.*

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

The New York State Department of Corrections has created a three-step process to exhaust all administrative remedies available to inmates. *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004). First, the inmate must file a grievance complaint with the Grievance Clerk within fourteen (14) days of the incident. N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(a)(1). The complaint is then submitted to the IGRC to review the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(a)(2)-(5). Second, if the inmate appeals the IGRC decision, then the inmate may appeal to the Superintendent. *See* N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(b). Third, if the inmate appeals the Superintendent's determination, the CORC is to make a final administrative determination. N.Y. COMP. CODES R. & REGS. tit. 7, §701.7(c). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983." *Colon v. Harvey*, 344 F. Supp. 2d 896, 897 (W.D.N.Y. 2004) (citing *Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001) & *Santos v. Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

The Second Circuit has suggested a three-step inquiry when the inmate opposes a defendant's assertion that the inmate did not exhaust his remedies.

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Abney v. McGinnis*, 380 F.3d 663, 667-68 (2d. Cir. 2004). The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004), or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether

*-11-*

"special circumstances" have been plausibly alleged that justify "the prisoner's failure
to comply with administrative procedural requirements." *Giano v. Goord*, 380 F.3d at
675 (citing *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003); *Rodriguez* order).

*Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004); *see also Braham v. Clancy*, 425 F.3d 177,
181-82 (2d Cir. 2005).

Since failure to exhaust is an affirmative defense and defendants may be estopped from asserting the

defense as "special circumstances may excuse a prisoner's failure to exhaust," the specific

circumstances of each case must be examined. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004)

(citations omitted). Some special circumstances include, but are not limited to, occasions when

prison officials "inhibit an inmate's ability to utilize administrative grievance procedures," if the

prisoner received a favorable disposition from his grievance but the time to appeal had expired and

no relief was forthcoming, and all appeals were undertaken but prison officials did not respond

within the required time period. *Id.* at 677. These special circumstances may provide an inmate

with a justification. The effect of a plaintiff's justification as to why there was no exhaustion "is

that, even though the administrative remedies are no longer available for reasons of timing or other

procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding."

*Id.* at 676. Additionally, "exhausted claims filed alongside unexhausted ones may proceed even

though the unexhausted claims must be dismissed." *Id.* at 675.

Here, Defendant Nunez states that Plaintiff has fully exhausted only one grievance

pertaining to Great Meadow. Defs.' Mem. of Law at p. 6; Eagen Aff. at ¶¶ 8-10, Ex. A. This

grievance was filed on April 22, 2002, and appealed to the highest level with the CORC. Defs.'

Mem. of Law at p. 7; Eagen Aff., Ex. B, CORC Appeal, dated July 3, 2002. Furthermore,

Defendant Lee notes that no grievances were filed at Clinton and Defendants Graceffo and Laux

state that two medical grievances were filed at Auburn, one on May 20, 2002 and another on June 3,

*-12-*

2002, although neither was appealed to the Superintendent nor the CORC.  Defs.' Mem. of Law at

pp. 6-7; Rock Decl., Exs. B & C; Eagen Aff at ¶ 10, Ex. A.

However, Plaintiff claims that he did file grievances against all Defendants but was told that

he did not need to "follow up because the problem was solved."  Rios Decl. at ¶ 74.  Plaintiff states

that since he "discovered" the misdiagnosis in 2000, he has attempted to exhaust his remedies but

was prevented from doing so by the grievance staff and was led to believe that he was unable to

"procedurally grieve staff in a different facility from the one that he was currently housed in." *Id.*

Plaintiff also states he is not proficient in English and needed help from other inmates; however,

based on his "desire to preserve the confidentiality" of his issues, he did not share his complaints

with those inmates who helped him prepare the grievances. *Id.* at ¶ 76.  Plaintiff also claims he was

discouraged from pursing administrative remedies when he was told, in writing, that "outside

providers only make recommendations on treatment[.]" *Id.* at ¶ 77, Ex. U, Rios Grievance Appeal

to Superintendent, dated Feb. 16, 2005.  In regards to all of the instances claimed by Plaintiff that

prison staff prevented him from exhausting, Plaintiff neither specifies at which facility or facilities

he was frustrated from filing grievances or appealing, the individual prison officials who made those

statements, nor does he provide any dates as to when these events occurred.

Plaintiff did, belatedly, attempt to file grievances at both Auburn and Great Meadow.  On

January 13, 2005 and February 7, 2005, Plaintiff filed grievance complaints with Auburn.  Rios

Decl., Exs. T, Auburn Compl., dated Feb. 7, 2005 & U, Auburn Compl., dated Jan. 13, 2005.

Plaintiff's January 13th complaint stated he was not receiving his medication and his February 7th

complaint was against Defendants Graceffo and Laux regarding his denial of medical treatment. *Id.*

The February 7th complaint was filed only after the suggestion that he had not exhausted his

remedies.  Rios Decl., Ex. T, Auburn Compl., dated Feb. 7, 2005.  Plaintiff's grievance appeal was

denied by the Superintendent, who stated that "outside providers only make recommendations on

treatment, the facility medical provider, based upon their judgment or experience, prescribe

medication."[7]  Rios Decl., Ex. U, Rios Grievance Appeal to Superintendent, dated Feb. 16, 2005.

This was appealed to the CORC which upheld the Superintendent's determination.  Rios Decl., Ex.

U, Rios Grievance Appeal to CORC, dated Mar. 16, 2005.

Plaintiff filed two grievance complaints at Great Meadow on September 29, 2005.  Rios

Decl., Ex. T, Grievance Compl. against Graceffo, Mathews & Laux, dated Sept. 29, 2005, &

Grievance Compl. against Lee, Mitchell & Quclse, dated Sept. 29, 2005.  The first complaint was

against Defendants Graceffo and Laux for misdiagnosis as well as denial and delay in treatment.[8]

Rios Decl., Ex. T, Grievance Compl. against Graceffo & Laux.  The second complaint was against

Defendant Lee for the exact same reasons as the first complaint.[9]  Rios Decl., Ex. T, Grievance

Compl. against Lee, Mitchell & Quclse.  Both grievances were returned to Plaintiff for failing to

submit the complaint within fourteen days of the incident.  Rios Decl., Ex. T, Interdepartmental

Communication, dated Sept. 29, 2005.  It was stated that the complaint could only be approved by

the IGP Supervisor once the fourteen days had passed based on mitigating circumstances and that

Plaintiff could submit the mitigating circumstances for the IGP Supervisor's review.[10]  *Id.*

---

[7] It should be noted that it is not clear if both belated grievances were taken together or which was appealed.  Both appeals contain grievance number AUB-44146-05, but that number does not correspond to the grievance number filed on January 13, 2005, and no grievance number is provided in the February 7, 2005 complaint.  *See* Rios Decl., Exs. T & U.

[8] Neither Defendant Graceffo nor Laux work at Great Meadow and instead are employed at Auburn.

[9] Again, Defendant Lee does not work at Great Meadow but in fact works at Clinton.

[10] It is unknown to this Court whether or not Plaintiff submitted any mitigating circumstances to the IGP Supervisor.

Since Defendants put forth the affirmative defense of failure to exhaust and Plaintiff opposes such defense, this Court will make the three-step inquiry set forth by the Second Circuit.  With the first inquiry, depending on the prisoner's explanation, the Court must decide whether the remedies were "available."  "'Available' means more than the mere presence of a grievance system but also that the system is functionally available to the prisoner."  *Shaheen v. Hollins*, 2005 WL 2179400, at *3 (N.D.N.Y. Sept. 7, 2005) (citing *Hemphill v. New York*, 380 F.3d at 686-87 ("[I]n some circumstances, the behavior of the defendants may render administrative remedies unavailable.")); *see also Abbas v. Senkowski*, 2005 WL 2179426, at *6 (S.D.N.Y. Sept. 9, 2005).  The "proper test for determining whether ordinary grievance procedures were 'available' [is] whether 'a similarly situated individual of ordinary firmness [would] have deemed them available.'"  *McCullough v. Burroughs*, 2005 WL 3164248, at *3 (E.D.N.Y. Nov. 29, 2005) (quoting *Hemphill v. New York*, 380 F.3d at 688).  In addition, "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts."  *McCullough*, 2005 WL 3164248, at *3 (quoting *Hemphill v. New York*, 380 F.3d at 688).

Plaintiff gives several explanations as to failure to exhaust.  Based upon the explanations, Plaintiff's statements that he was told he did not have to follow up and that the grievance staff misinformed him as to whether he could or could not file complaints from different facilities may have caused Plaintiff to believe the remedies were not available.  The grievance system may not have been functionally available to Plaintiff because of the statements made by prison officials.  Thus, drawing all inferences in favor of Plaintiff, administrative remedies were not "available" to

Rios which would have enabled him to fully exhaust his remedies.[11]

Although remedies were not "available," Defendants, nevertheless, would be estopped from asserting the defense of failure to exhaust.  In making a determination based on the second inquiry, "[t]o establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment." *McCullough*, 2005 WL 3164248, at *4 (quoting *Lewis v. Washington,* 300 F.3d 829, 834 (7th Cir. 2002)).  In addition, "[w]hen asserting equitable estoppel against the government, one must also prove affirmative misconduct."  *McCullough*, 2005 WL 3164248, at *4 (quoting *Lewis v. Washington,* 300 F.3d at 834).  Despite the fact that Plaintiff's states in his first two explanations that prison officials essentially prevented him from exhausting his complaints because the problem was solved and because he was led to believe he could not grieve medical staff in another facility, Plaintiff provides no specific dates or events to which the Court might tie those explanations and merely makes conclusory and general allegations.  Plaintiff does, however, allege misrepresentation by the opposing party, his reasonable reliance on that misrepresentation and detriment as a result. Drawing all inferences in favor of Plaintiff, since Plaintiff has provided that statements were made that could possibly prove affirmative misconduct, Defendants are estopped from asserting the

---

[11] Generally, since Plaintiff filed two grievances filed at Auburn on May 20, 2002 and June 3, 2002, for which he received no response from the IGRC within the regulatory period, and assuming the IGRC did not seek an extension of time, Plaintiff may file an appeal to the next level without awaiting administrative action.  *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8; *Wheeler v. Goord*, 2005 WL 2180451, at *6 (N.D.N.Y. Aug. 29, 2005) (Peebles, M.J.) Therefore, Plaintiff's failure to pursue the matter to the [next level] after not having received a response to his grievance could be deemed as fatal to his claim[]" under the PLRA.  *Id.* (citing *Waters v. Schneider*, 2002 WL 727025, at *1-2 (S.D.N.Y. Apr. 23, 2002)).  Plaintiff provides no reasons why this procedure was not followed as to the claims from the two complaints at Auburn.  Although the Regulations state that Plaintiff may have appealed when no response was received, the Second Circuit, in *Abney v. McGinnis*, seems to suggest that remedies may be rendered "unavailable" if the IGRC, Superintendent, or CORC fail to take timely action on a grievance filed.  *See generally Abney v. McGinnis*, 380 F.3d 663, 668-69.

affirmative defense of failure to exhaust.[12]

Therefore, it is recommended that the Motion for Summary Judgment on failure to exhaust be **denied**.

### E.  Personal Involvement

Defendants Lee and Nunez claim that there are no allegations of their personal involvement in any wrongdoing and therefore, Plaintiff's claims should be dismissed as to them.  Defs.' Mem. of Law at pp. 8-9.  Plaintiff claims that Defendants Lee and Nunez failed to give Plaintiff proper medication based on the "misdiagnosis" of his disease.  Am. Compl. at ¶¶ 9 & 12; Rios Decl. at ¶¶ 70-73.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Here, Plaintiff was not seen by any medical staff, including Defendant Lee, at Clinton as there are no ambulatory health record entries for the period of time Plaintiff was housed in the facility.  *See* Dkt. No. 38, Kang Lee Aff., Ex. A at pp. 6-8.  Furthermore, Plaintiff admits that he never filed a grievance against Defendant Lee at the Clinton Correction Facility.  Rock Decl., Ex. A, Pl.'s Dep. at p. 38.

With regard to Defendant Nunez this Court cannot discern whether or not there was personal

---

[12] Even had special circumstances been considered, Plaintiff's two explanations, taken at their most liberal construction, **may** fall with the "special circumstances" where Plaintiff received a favorable disposition but did not appeal as time had expired and prison officials inhibited Plaintiff's ability to utilize grievance procedures.  *Giano v. Goord*, 380 F.3d at 677.

involvement through the records as Defendant Nunez did not provide an affidavit nor do the ambulatory health record entries shed any light as to his involvement considering most entries were not signed or the signatures were illegible and/or unrecognizable. *See generally* Paolano Aff., Exs. A & B. In this regard, Defendant Nunez has failed to meet the requisite burden in moving for summary judgement.

Therefore, it is recommended that the Motion for Summary Judgment as to Defendant Lee be **granted** on this issue and **denied** as to Defendant Nunez.

## F. Eighth Amendment Cruel and Unusual Punishment Claim

Rios claims that Defendants Graceffo, Laux, Paolano, Nunez, and Nesmith violated his Eighth Amendment rights by acting with deliberate indifference to his medical needs when they misdiagnosed Plaintiff, did not adequately treat Plaintiff's Crohn's disease and diarrhetic conditions, delayed treatment, failed to follow other doctor's recommendations, and provided medications that were ineffective.[13] Am. Compl. at ¶¶ 5, 6-10, & 12; Rios Decl. at ¶¶ 6, 11-18, 21, 26, 29-30, & 70-73.

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted)

---

[13] Plaintiff does not provide specific dates for when each of these events allegedly occurred from February 7, 2000 until the filing of the Amended Complaint.

(alteration in original).  This standard contains objective and subjective elements.  *Id.*  "The

objective 'medical need' element measures the severity of the alleged deprivation, while the

subjective 'deliberative indifference' element ensures that the defendant prison official acted with a

sufficiently culpable state of mind."  *Id.* at 183-84 (citing *Chance*, 143 F.3d at 702 & *Hathaway v.

Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  The subjective element "entails something more than

mere negligence . . . [but] something less than acts or omissions for the very purpose of causing

harm or with knowledge that harm will result."  *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting

*Farmer v. Brennan*, 511 U.S. 825 (1994)).

This deliberate indifference must be in regards to the "prisoner's serious illness or injury[.]"

*Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Additionally, "'[b]ecause society does not expect that

prisoners will have unqualified access to health care,' a prisoner must first make this threshold

showing of serious illness or injury in order to state an Eighth Amendment claim for denial of

medical care."  *Smith*, 316 F.3d at 184 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (further

citation omitted).  Some factors that determine whether a prisoner's medical condition is serious

include: "1) whether a reasonable doctor or patient would perceive the medical need in question as

important and worthy of comment or treatment, 2) whether the medical condition significantly

affects daily activities, and 3) the existence of chronic and substantial pain."  *Brock v. Wright*, 315

F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an

inmate is not required to show "that he or she experiences pain that is the limit of human ability to

bear, nor [does the court] require a showing that his or her condition will degenerate into a life

threatening one").

The prisoner has to show "more than an inadvertent failure to provide adequate medical care

*-19-*

by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184 (internal quotation marks and citation omitted).  Prison officials act with deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837).  The Eighth Amendment deals with "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract[.]" *Smith*, 316 F.3d at 186 (citations omitted).  Moreover, the "severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Id.* at 187 (citation omitted).

A prisoner's disagreement with the form of treatment proscribed by medical personnel will not necessary implicate the Eighth Amendment. *Ifill v. Goord*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) (citation omitted).  Furthermore,

> disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment.  Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

*Id.* (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)).

Notably, when a prisoner, in essence, claims medical malpractice,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omission sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Estelle*, 429 U.S. at 106 & n.14).

If the malpractice involved "culpable recklessness, i.e., an act or failure to act by the prison doctor

that evinces 'a conscious disregard of a substantial risk of harm,'" then it may constitute deliberate

indifference. *Id.* (quoting *Farmer*, 511 U.S. at 839).  Additionally, "[p]rison officials and medical

personnel have wide discretion in treating prisoners, and Section 1983 is not designed to permit

federal courts to interfere in the ordinary medical practices of state prisons." *Ifill v. Goord*, 2004

WL 1663994, at *3 (internal quotation marks and citation omitted).

   Because every doctor does not treat an illness in the same way, the mere difference in

treatment by a defendant physician does not amount to culpability. *McKenna v. Wright*, 2002 WL

338375, at *8 (S.D.N.Y. Mar. 4, 2002) (citing *Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325

(N.D.N.Y. 2000)).  There will be no Eighth Amendment claim then "when a *doctor* disagrees with

the professional judgment of another doctor." *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 110

(3d Cir. 1990) (emphasis in original)); *see also Webb v. Jackson*, 1994 WL 86390, at *3 (S.D.N.Y.),

*aff'd* 47 F.3d 1158 (2d Cir. 1995) (stating that "mere differences in opinion, whether between

doctors or laymen, based on medical care does not give rise to an Eighth Amendment violation of

inadequate medical treatment pursuant to section 1983" (citation omitted)).  In addition, "a claim

based solely on a doctor's misdiagnosis or faulty judgment, with no facts to support a charge of

deliberate indifference on his part, is not cognizable under § 1983." *Tomarkin v. Ward*, 534 F.

Supp. 1224, 1230 (S.D.N.Y. 1982) (citing *Arroyo v. Schaefer*, 548 F.2d 47 (2d Cir. 1977)); *see also*

*Troy v. Kuhlmann*, 1999 WL 825622, at *6 (S.D.N.Y. Oct. 15, 1999).

   Furthermore, a delay in medical treatment does not necessarily invoke the Eighth

Amendment.  The "delay in treatment does not violate the constitution unless it involves an act or

failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau County Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance,* 143 F.3d at 703). Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast degenerating condition for three days; or delayed major surgery for over two years." *Freeman v. Stack*, 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000) (internal quotation marks omitted).

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment because "he should not have been taking the volume of different Crohn's disease medications for a chronic condition of diarrhea because the condition was not brought about by the disease." Am Compl. at ¶ 15.

Crohn's disease is defined as "a nonspecific chronic transmural inflammatory disease that most commonly affects the distal ileum and colon but may occur in any part of the GI tract." THE MERCK MANUAL 302 (17th ed. 1999); Rios Decl., Ex. D, "The Digestive System" at p. 1. Symptoms include, but are not limited to, "chronic diarrhea with abdominal pain, fever, anorexia, weight loss, and a right lower quadrant mass or fullness[.]" THE MERCK MANUAL 303 (17th ed. 1999); Rios Decl., Ex. D, "The Digestive System" at p. 1. Diarrhea results from the inflammation when the pain from the inflammation would cause the intestines to empty frequently. THE MERCK MANUAL 302-04 (17th ed. 1999); Rios Decl., Ex. B, "Crohn's Disease." Here, Plaintiff does not dispute that he has Crohn's, only that he did not receive proper treatment for his diarrhea. Rock Decl., Ex. A, Pl.'s Dep. at p. 13.

Defendants Graceffo, a medical doctor at Auburn, and Laux, a physician's assistant at

Auburn, examined Plaintiff and prescribed numerous medications, including Prednisone which is an anti-diarrheal medication, approximately eighteen (18) times while Plaintiff was housed at Auburn from July 1997 until August 1998.  Rios Decl. at ¶¶ 37, 39, 43, 44, 47, 51-57, 59, 60, 63, 65, & 66, Exs. P, dated Aug. 12, 1997, & R, dated Sept. 26, 1997; *see also supra* Part I.  Plaintiff also received consultations for his medical condition and complaints during this time period.  *Id.* at ¶¶ 38, 45, 46, & 58.  Furthermore, Defendant Graceffo states that Plaintiff was not seen by medical staff during Plaintiff's first housing at Auburn in October 2000 as evidenced by the fact that there are no ambulatory health record entries for that time period.  Dkt. No. 38, Anthony Graceffo Aff. at ¶ 3, Ex. A.  Dr. Graceffo also states that during Plaintiff's second stay at Auburn from April 29, 2002-June 5, 2002, he merely wrote a prescription for Lomotil, an anti-diarrheal medication, on May 13, 2002.  *Id.* at ¶ 5, Ex. A at p. 2.

Defendant Laux states as well that he did not examine Rios during the period of October 18-24, 2000.  Dkt. No. 38, Richard Laux Aff. at ¶¶ 6 & 8.  Laux did examine Plaintiff when Plaintiff was housed at Auburn for the second time.  *Id.* at 10.  On May 17, 2002, Plaintiff was supposed to see Laux but Plaintiff was a no show.  *Id.* at ¶ 11, Ex. A at p. 1.  When Laux examined Rios on May 22, 2002, for Plaintiff's complaint about diarrhea, Laux prescribed Prednisone, an "anti-inflammatory often used to treat diarrhea, especially when . . . diarrhea is symptomatic" of Crohn's. *Id.* at ¶ 14, Ex. A at p. 1.  Additionally, on May 31, 2002, Plaintiff again complained of diarrhea and Laux noticed Plaintiff had ingested twenty days worth of Prednisone in one week.  *Id.* at ¶ 15, Ex. A at p. 4.  Laux reiterated the directions on taking the prescription and renewed Plaintiff's prescription for Prednisone and also prescribed Lomotil.  *Id.*  Plaintiff was also seen at Auburn on May 4, 13, 24, 28, and June 2, 2002.  *See* Laux Aff., Ex. A.  During that period, Plaintiff received Lomotil,

Calcium Carbonate, Flagyl, Immodium, and Loperamide for his complaints of diarrhea and Crohn's. *Id.*

As to Defendants Graceffo and Laux, Plaintiff cannot prove deliberate indifference.  First, Plaintiff must show that he has a serious illness or injury.  As Defendants do not address whether Crohn's constitutes a serious illness or not, the Court will assume that Crohn's disease is a serious illness.  Defs.' Mem. of Law at pp. 9-15.  Plaintiff must next prove that prison officials knew of and disregarded an excessive risk to Plaintiff's health or safety and that the officials were aware of facts from which the inference could be drawn that the substantial risk of harm exists and that they actually drew the inference.  Rios has not established that Defendants Graceffo or Laux knew of and disregarded an excessive risk to Rios's health.  During 1997 and 1998, Plaintiff received treatment and consultations for the Crohn's and other problems Plaintiff was having as a result of the disease. Plaintiff has stated that the misdiagnosis, inadequate treatment, and delay resulted from medications that were aimed at his Crohn's disease rather than his diarrhea and that since there are no entries for the time period of October 18-24, 2000, that proves there was a denial of treatment.  Rios Decl. at ¶¶ 17, 18, 23, 26, & 30.  First of all, as Plaintiff's own documents state, frequent diarrhea is one of the many symptoms associated with Crohn's disease.  Second, the medications prescribed to Rios included anti-diarrheal agents that treated diarrhea, some of which also treated symptoms of Crohn's disease.  Graceffo Aff. at ¶¶ 5 & 7; Laux Aff. at ¶¶ 14 & 15.  Plaintiff does not dispute that he has Crohn's, only that he believes the medications should focus on his diarrhea and not his Crohn's because his Crohn's is not active.  Rock Decl., Ex. A, Pl.'s Dep. at p. 13; Rios Decl. at ¶ 30. Plaintiff has not shown that his complaints were ignored by Graceffo or Laux nor that they failed to prescribe medications when Plaintiff complained of diarrhea.

In addition, Rios's disagreement with the form of treatment will not necessarily implicate the Eighth Amendment.  Specifically, disagreements over medications and forms of treatment are not adequate grounds for a Section 1983 claim.  *See Ifill v. Goord*, 2004 WL 1663994, at *3.  Plaintiff's claims may, at worst, connote negligence amounting to medical malpractice, however, these disagreements do not violate the Eighth Amendment.  Moreover, Plaintiff's claim that he was receiving improper treatment came as a result of a consultation with Dr. Maliakkhal in February 2000.  Defs.' Mem. of Law at p. 12; Rios Decl. at ¶ 10.  Plaintiff states that Dr. Maliakkhal "attributed plaintiff's diarrhea to the hemicolectomy preformed in 1997."  Rios Decl. at ¶ 10, Ex. F. However, this could constitute a difference in opinion as to whether the diarrhea is a result of Crohn's disease or whether it is a direct result of the surgery, which, ironically, alerted doctors to the fact that Plaintiff had Crohn's disease.  Am. Compl. at ¶¶ 24 & 25.  Differing medical opinions between doctors does not give rise to an Eighth Amendment claim.  *See Webb v. Jackson*, 1994 WL 86390, at *3.

Also, Plaintiff's claims of misdiagnosis must fail as a claim for misdiagnosis, without any supporting facts as to deliberate indifference, cannot stand.  Plaintiff generally alleges that medications prescribed to him were the result of a misdiagnosis of his diarrhea being attributed to the Crohn's.  Again, diarrhea is a symptom of Chron's and Rios has not provided any facts as to how providing medications aimed to treat diarrhea constitutes deliberate indifference by Defendants Graceffo and Laux.  In fact, Defendants Graceffo and Laux's treatment of the very ailment complained of belies Plaintiff's Eighth Amendment claims.

Regarding Plaintiff's claims that he was denied treatment and that there was a delay in treatment, the fact that no entries exist as to the time Plaintiff was housed at Auburn in October

2000 shows that Plaintiff, himself, never sought treatment from the medical staff.  There are over

one hundred nineteen pages of ambulatory health record entries from 1997 to 2002 clearly showing

that Plaintiff was able to seek medical attention when it was needed.  *See generally* Paolano Aff.,

Exs. A & B; Rios Decl., Exs. A, P, Q, R, & S.  Plaintiff had the opportunity to seek medical

attention while at Auburn and the absence of entries cannot constitute a denial of treatment if

Plaintiff himself never sought it out.  Moreover, Plaintiff has generally stated that there was a delay

in treatment because the medications were not working.  Rios Decl. at ¶ 28.  However, delay in

treatment will not violate the Eighth Amendment unless an act or failure to act evinces a conscious

disregard of a substantial risk of serious harm.  *See Thomas v. Nassau County Corr. Ctr.*, 288 F.

Supp. 2d at 339.  Plaintiff's claim of delay does not fall within the category for which such a

classification is reserved.  *See Freeman v. Stack*, 2000 WL 1459782, at *6.  There was no delay in

treatment amounting to a disregard of a substantial risk of serious harm.  Plaintiff received

medications to alleviate his complaints of diarrhea and in addition, Plaintiff did not follow the

dosing directions of the medications that had been prescribed.  *See supra* Part I.  Plaintiff's belief

that these medications did not work and that in and of itself caused a delay in treatment does not

constitute a violation of the Eighth Amendment.

With regard to Defendants Paolano, Nunez, and Nesmith, who are all employed at Great

Meadow, Plaintiff again claims that he was misdiagnosed, received inadequate treatment, and

treatment was denied and/or delayed.  Rios Decl. at ¶¶ 6, 7, 12, & 14.  As to Plaintiff's claim that he

verbally told Dr. Paolano about the misdiagnosis, Plaintiff provides no documentation that he was

ever seen by Defendant Paolano in October 1999 nor has he stated how he was not treated on that

occasion.  *Id.* at ¶¶ 2-10.  Plaintiff made many complaints regarding his diarrhea and Crohn's from

2000 till 2002 during his incarceration at Great Meadow.  *See* Paolano Aff., Exs. A at pp. 8, 9, 13, 17, 20, 26, 27, 31, 32, 34, 39, 40, 43, 44, 46, 50, 53, 57, 59, 61, 64, 65, & 68, & B at pp. 1, 2, 4, & 5.  During that same period, Plaintiff received numerous medications, doctors appointments, consultations, and lab work.  *See generally id.*, Exs. A & B.  Plaintiff was prescribed medications or refills in 2000 on February 4 & 14, March 6 & 20, April 10 & 24, May 12, July 12 & 13, August 21, September 18, October 25, November 17 & 28, and December 22; in 2001 on January 30, February 14, 16, 17, & 20, March 8, 26, & 30, April 5, May 8, June 18, July 19, September 7 & 10, October 3, November 2 & 8, and December 31; and in 2002 on January 3, February 28, April 16 & 23, June 6, 11, & 24, July 3, 8, 13, 18, & 25, and August 2, 10, & 11.  *See id.*, Exs. A at pp. 7, 8, 12, 14, 16, 17, 18, 21, 22, 25, 26, 29, 30-33, 35-37, 40, 41, 46, 50, 54, 56, 57, 59, 60, 64, 69, 75, & 76, & B at pp. 1-9.  Specifically, Plaintiff received Immodium, Lomotil, Loperamide, Calcium Carbonate, Cholestyramine, Actigall, Entocort, and Flagyl.  Paolano Aff. at ¶¶ 5-7; Dkt. No. 38, Ted Nesmith Aff. at ¶¶ 6 & 7.  Plaintiff was also referred to a gastroenterologist by Dr. Paolano on February 14, 2000, and was seen on February 23, 2000, where the specialist made findings and prescribed medications.  Rios Decl., Ex. C, Request and Report of Consultation, dated Feb. 23, 2000.  Another referral to a gastroenterologist was made on February 24, 2000, by Dr. Paolano, and the consultation was held on April 10, 2000.  *Id.*, Ex. C, Request and Report of Consultation, dated Apr. 10, 2000.  B-12 injections were recommended along with other medications.[14]  *Id.*  Dr. Paolano also placed a referral to the gastroenterologist on April 10, 2000, and Rios was seen on August 14, 2000.  *Id.*, Ex. C, Request and Report of Consultation, dated Aug. 14, 2000.  Plaintiff further obtained a

---

[14] Plaintiff received a series of B-12 injections as recommended.  *See* Paolano Aff., Exs. A at pp. 16, 17, 21, 26, 30, 32, 46, 48, 54, 56, 57, 59, 65, 66, 71, & 73, & B. at pp. 3 & 6.

radiological consultation on September 8, 2000, whereby an upper gastrointestinal study was performed.  Rios Decl., Ex. C, Radiological Consultation.

Plaintiff alleges that Defendants Paolano, Nunez, and Nesmith were indifferent to his medical needs in violation of the Eighth Amendment.  As noted above, in order to establish deliberate indifference, it is assumed Plaintiff has a serious illness.  However, Plaintiff has failed to show that these Defendants knew of and disregarded an excessive risk to Plaintiff's health.  As shown by the record, Plaintiff received sufficient care as he was prescribed medications, provided with consultations and appointments with doctors, and had lab work performed.  Any disagreements with medications and form of treatment Rios was receiving would not be adequate grounds for a claim of deliberate indifference under the Eighth Amendment.  Plaintiff's assertion of misdiagnosis in that the medications were meant for Crohn's and not the diarrhea are also unfounded and fall within the category of disagreements with medications.  Nevertheless, Plaintiff has not provided facts to support a charge of deliberate indifference with his misdiagnosis claim.  Additionally, Plaintiff has once again failed to show that there was denial of treatment or delay in treatment. Plaintiff did not cite to any specify date or event to prove the denial and delay and the record is devoid of any gaps in treatment or refusal by any of the medical staff to treat Rios.

For the reasons stated above, it is recommended that the Motion for Summary Judgment on the issue of violations of the Eighth Amendment be **granted**.

### F.  Service of Other Defendants

As previously noted, Defendants Elizabeth C. Squies, M.D., Juan Ayardi, M.D., Dr. Tassiopoulos, Gregory Matthews, M.D., W. Smith, M.D., J. Mitchell, and Quclse have not been served in this action.  *See* Dkt Nos. 11, 19, 27, 28, 29, 30, & 31.  Under FED. R. CIV. P. 4(c)(1), the

plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, FED. R. CIV. P. 4(m) states that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, then the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time . . . ." Furthermore, pursuant to the Local Rules for the Northern District of New York ("Local Rules"), "service of process [is required] upon all defendants within sixty (60) days of the filing of the complaint." N.D.N.Y.L.R. 4.1.

On May 20, 2003, the Clerk ordered that Summonses and copies of the Amended Complaint be forwarded to the U.S. Marshall for service. Dkt. No. 9. The Summonses were issued on October 20, 2003, and the Marshals notified Plaintiff on November 10, 2003, that the USM 285 forms[15] were not signed. Dkt. No. 10. The Summonses were returned unexecuted as to the unserved Defendants. Dkt Nos. 11, 19, 27, 28, 29, 30, & 31. Plaintiff has made no other attempts to effectuate service upon these Defendants. Plaintiff is hereby noticed that his claims against the unserved Defendants could be dismissed due to his failure to serve them within the time limits set forth by the Local Rules and the Federal Rules. Thus, Plaintiff must notify the court **in writing** of his intentions with regard to the named but unserved Defendants. Failure to file such notice will result in this Court presuming that Plaintiff has abandoned his claims against Defendants Elizabeth C. Squies, M.D., Juan Ayardi, M.D., Dr. Tassiopoulos, Gregory Matthews, M.D., W. Smith, M.D., J. Mitchell, and Quclse and that this Court will recommend **dismissal with prejudice** for failure to prosecute.

### III. CONCLUSION

---

[15] This form is the "Request for Service" to the U.S. Marshals by Plaintiff.

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment on behalf of Defendants Anthony Graceffo, Richard C. Laux, A. Paolano, E. Nunez, T. Nesmith, and Kang Lee (Dkt. No. 38) be **GRANTED**; and it is further

**ORDERED**, that Plaintiff shall notify the Court **in writing** of his intentions with regard to Defendants Elizabeth C. Squies, M.D., Juan Ayardi, M.D., Dr. Tassiopoulos, Gregory Matthews, M.D., W. Smith, M.D., J. Mitchell, and Quclse no later than **April 21, 2006**. Upon receipt of Plaintiff's notice that he intends to prosecute his claims against Defendants Elizabeth C. Squies, M.D., Juan Ayardi, M.D., Dr. Tassiopoulos, Gregory Matthews, M.D., W. Smith, M.D., J. Mitchell, and Quclse, the Clerk shall forward this matter to the undersigned for the issuance of an order to the Marshal's Service directing service of Defendants Elizabeth C. Squies, M.D., Juan Ayardi, M.D., Dr. Tassiopoulos, Gregory Matthews, M.D., W. Smith, M.D., J. Mitchell, and Quclse at their current place of employment. **Should, however, Plaintiff fail to submit such notice to the Court, the Court will deem his claims against Defendants Elizabeth C. Squies, M.D., Juan Ayardi, M.D., Dr. Tassiopoulos, Gregory Matthews, M.D., W. Smith, M.D., J. Mitchell, and Quclse abandoned and shall issue a recommendation of dismissal with prejudice to the District Judge**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).

Date:   March 17, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

*-31-*